402 P.2d 228

**Carl Lavern NESBITT, Appellant,**

**v.**

**Lesta Clare NESBITT, Appellee.***

**No. 2 CA–CIV 53.**

Court of Appeals of Arizona.

May 21, 1965.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7874. The matter was referred to this Court pursuant to § 12–120 23, A.R.S.

Wolfe, McCarty, Greer, Knez & Glatz, by Norman C. Wade, Tucson, for appellant.

Martin S. Rogers, Tucson, for appellee.

HATHAWAY, Judge.

This is an appeal from an order of the Superior Court of Pima County granting appellee's motion to set aside a divorce decree on the ground that said decree was void.

On November 1, 1961, Carl Nesbitt filed a complaint in Superior Court seeking an absolute divorce from Lesta Nesbitt and permanent custody of the two minor children of the parties. On January 12, 1962, the defendant having failed to appear or answer, default was entered. Three days later, Carl was granted a default judgment of divorce and was awarded custody of the minor children subject to reasonable

visitation rights of Lesta. At the time of entry of the divorce decree, Lesta, who was 18½ years of age, was not represented at the hearing by a guardian ad litem. Two days after the divorce was granted, Lesta remarried.

On November 1, 1962, Lesta filed a motion and petition to set aside the divorce decree for the reason "that the defendant is and was a minor under 21 years of age and had no guardian appointed in the above captioned case." The motion was opposed by Carl who contended that the failure to appoint a guardian ad litem rendered the judgment only voidable and that Lesta's subsequent conduct of immediately remarrying precluded her from attacking the validity of the divorce decree. The court commissioner ruled that the decree was rendered void by the failure to appoint a guardian ad litem, denied the plaintiff's motion to strike the prayer for attorney's fees asked by Lesta's attorney, and ordered the plaintiff to pay a reasonable attorney's fee.

Appellant's assignments of error, in substance present the following issues for our determination:

1. Does failure to appoint a guardian ad litem for an infant defendant in a divorce action render the judgment void?

2. Is a divorced infant who subsequently remarries precluded from attacking the validity of the divorce decree?

3. Should the husband be required to pay the wife's attorney's fees incurred in her attack on the divorce decree?

Considering first the effect of failure to appoint a guardian ad litem for an infant litigant, we find that Rule 17(g) of the Arizona Rules of Civil Procedure, 16 A.R.S. provides:

"If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."

In part, Rule 55(b) of the Arizona Rules of Civil Procedure provides:

"1. * * * but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, or other such representative who has appeared therein * * *."

■ We do not agree with the appellee's position that the failure to appoint a guardian ad litem renders the judgment void for lack of jurisdiction. Where the court otherwise has jurisdiction, a judgment or decree rendered against an infant without appointment of a guardian ad litem, while it may be erroneous, at most is only voidable, and not absolutely void. 43 C.J.S. Infants § 108 b, p. 279; Pacific Coast Joint Stock Land Bank of San Francisco v. Clausen et al., 8 Cal.2d 364, 65 P.2d 352, 353 (1937); Stephenson v. Stephenson, 196 Okl. 623, 167 P.2d 63, 65 (1946); State ex. rel. Richey v. Superior Court for King County, 59 Wash.2d 872, 371 P.2d 51, 55 (1962); Allen v. Hickman, 383 P.2d 676, 678 (Okl.1963); Lane v. Snitz, 389 P.2d 962, 964 (Okl.1964); Savage v. Rowell Distributing Co., 95 So.2d 415, 418 (Fla.1957).

■ Our Rule 17(g) is patterned after Rule 17(c) of the Federal Rules of Civil Procedure. Consequently, the construction placed on said rule by federal courts is pertinent. These courts have held that failure to appoint a guardian ad litem for an incompetent defendant does not render a judgment void. Till v. Hartford Accident & Indemnity Co., 10th Cir., 124 F.2d 405, 409 (1941); Westcott v. United States Fidelity & Guaranty Co., 4th Cir., 158 F.2d 20, 22 (1946); Zaro v. Strauss, 5th Cir., 167 F.2d 218, 220 (1948); Roberts v. Ohio Casualty Insurance Co., 5th Cir., 256 F.2d 35, 38 (1958). The Zaro case held that a default judgment rendered against a nonresident incompetent defendant personally

served was voidable upon showing that the defendant had a meritorious defense and was not properly represented in the action. Furthermore, as noted by the court in Westcott v. United States Fidelity & Guaranty Co., supra, the word "or" in the last sentence of Federal Rule 17(c) [providing that the court shall appoint a guardian ad litem for an infant not otherwise represented in an action "or" shall make such other order as it deems proper for his protection] did not mean "and," which would have made the appointment of a guardian ad litem mandatory.

■■■ Let us now consider the application of Rule 55(b), supra, which directs that no default judgment be entered against an infant unless represented in the action by a general guardian or other representative. This rule further provides that notice of application for judgment shall be given to a defendant who has appeared in the action. However, it has been held that failure to give such notice is not jurisdictional, but merely a procedural irregularity. Rogers v. Tapo, 72 Ariz. 53, 230 P.2d 522, 525 (1951); Stafford v. Dickison, 46 Haw. 52, 374 P.2d 665, 670 (1962). If application is not timely made to set aside the judgment, it becomes res judicata as any judgment entered on the merits. Rogers v. Tapo, supra. Therefore, we hold that the provisions of Rule 55(b) do not render the default judgment herein under consideration void, but merely voidable.

Appellee relies on the following statement in Pintek v. Superior Court In and For Cochise County, 78 Ariz. 179, 183, 277 P.2d 265, 268 (1954):

"While an infant generally may sue or be sued, and is subject to and bound by the same rules of procedure as an adult litigant, yet an infant cannot bring or defend a legal proceeding in person, but must sue or be sued by a legally appointed general guardian, or next friend or a guardian ad litem."

We cannot agree with appellee's contention that this quotation supports the proposition that failure to appoint a guardian ad litem for an infant defendant nullifies the judgment. It has always been the policy of the law to protect those lacking in experience and of immature mind from artful and designing adults. Byers v. Lemay Bank & Trust Co., 365 Mo. 341, 282 S.W.2d 512, 514 (1955). However, in our zeal for guarding the interests of minors, we must not carry this policy to illogical extremes. It is common knowledge that in our modern life with the expanded opportunities for learning and experience available to the youth of today, a minor 18 years of age very often has attained a high degree of sophistication. With particular reference to the matter before us, it can hardly be said that Lesta was an inexperienced teen-ager —she had married at age 16, had produced two offspring, and was engrossed in an illicit extramarital affair prior to the divorce.

■■■ The controlling factor in determining whether failure to appoint a guardian ad litem requires reversal of or setting aside the judgment is whether substantial rights of the minor have been affected. Pacific Coast Joint Stock Land Bank of San Francisco v. Clausen et al., supra; King v. Wilson, 116 Cal.App. 191, 2 P.2d 833, 834 (1931); Trolinger v. Cluff, 56 Idaho 570, 57 P.2d 332, 335 (1936); 27 Am. Jur. Infants § 121. Consideration of the facts of the instant situation leads this court to conclude that the mere procedural irregularity resulted in no injustice to Lesta. She was personally served with the divorce complaint and summons, giving her notice that Carl was seeking a divorce and custody of the two children. Her mother, who had been appointed her guardian ad litem in a divorce action instituted by Lesta which was still pending, was present when service of process was made in this action. Lesta knew precisely when the divorce decree was entered, and as shown by the following testimony from the record below, she obviously wanted the decree of divorce entered so she could promptly remarry:

"Q. And prior to the time the action became final you and he decided

to get married as soon as it did become final?

"A. Yes."

And in the deposition of the man she subsequently married:

"Q. Now when did you and she decide to get married?

"A. I seen her on Saturday and Sunday night we decided to get married. Monday the divorce was final and Tuesday we got married.

"Q. But you did wait until the divorce was final before you and she went and—

"A. We had those divorce papers with us in our suitcase when we went to California.

"Q. And it was predicated upon the divorce that you and she went to California and got married?

"A. Yes."

To permit Lesta to accept the benefits of the divorce decree by remarrying and then to allow her to attack the judgment on the basis of a mere irregularity after a lapse of nine months is contra to all equitable principles. Her course of conduct shocks the conscience of this court. When the divorce decree was given, she could have attacked its validity, were she prejudiced thereby, or in the alternative she could accept it as given. To make her election, it was not necessary that she institute legal proceedings or make a formal declaration of intention. She could manifest her choice through her overt conduct, as she so eloquently did here. In cases involving adults, it has been generally held that one who accepts the benefits of a decree for some purposes (as the remarriage by the defendant here) will not be permitted to later take the inconsistent position that for other purposes the decree is invalid. Miles v. Jones, 197 Okl. 684, 173 P.2d 949, 952 (1946); 17 Am.Jur. Divorce & Separation § 538, p. 633; Brandt v. Brandt, 76 Ariz. 154, 261 P.2d 978, 981 (1953); Green v. Green, 77 Ariz. 219, 269 P.2d 718, 720 (1954). This principle is equally applicable to Lesta, even though her chronological age falls short of adulthood. The defense of infancy has always been intended as a shield to protect unsuspecting minors. We will not condone its use as a sword by one who neither needs nor deserves protection.

In considering the final assignment of error regarding the allowance of attorney's fees to appellee, we note that our statutes give the court the right to amend, revise, and alter any portion of the decree relating to "the expenses of the proceedings." 9 A.R.S. § 25–321. It has been held that these statutes confer a discretionary power on the court, whenever the decree is opened for any purpose, to require that the husband pay the expenses thereof, provided the discretion is exercised in a reasonable manner. Bradstreet v. Bradstreet, 34 Ariz. 340, 347, 271 P. 717 (1928); Fleming v. Fleming, 58 Nev. 179, 72 P.2d 1110, 1113 (1937).

Statutory provisions such as ours allowing attorney's fees to a wife in a domestic relations case are designed to achieve fairness. They seek to place a wife on an equal plane with her husband by allowing her attorney's fees from the husband when necessary to effect such parity. However, in exercising its discretion in the allowance of attorney's fees, the trial court's decision must be based upon the need of the one requesting the allowance *and* the ability of the other to pay. McNair v. McNair, 64 Wash. 2d ——, 391 P.2d 549, 550 (1964); Peercy v. Peercy, 392 P.2d 609, 612 (Colo.1964). In the case at bar, the record discloses no evidence of Lesta's lack of means to carry on the litigation or of Carl's ability to pay. Absent such a showing, it was error to allow suit money to Lesta.

The order setting aside the judgment and the allowance of attorney's fees is hereby reversed with instructions to enter judgment dismissing with prejudice the petition to set aside the divorce decree.

KRUCKER, C. J., and MOLLOY, J., concurring.